Filed 3/2/23  P. v. Washington CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

---

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

---

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092937 |
| Plaintiff and Respondent, | (Super. Ct. No. 08F04720) |
| v. | OPINION ON TRANSFER |
| JAMES WASHINGTON, | |
| Defendant and Appellant. | |

On May 21, 2010, a jury found defendant James Washington guilty of first degree felony murder (Pen. Code, § 187, subd. (a)) (statutory section citations that follow are to the Penal Code), second degree robbery (§ 211), and torture (§ 206).  The jury also found true the special circumstances allegations that defendant used a deadly weapon in connection with the murder and torture (§ 12022, subd. (b)(1)) and that the murder happened during the course of a robbery (§ 190.2, subd. (a)(17)).

1

In pertinent part, defendant received a sentence of life without the possibility of parole for the murder, plus one year.  We affirmed this judgment on appeal.  (*People v. Washington* (Jan. 3, 2013, C065636) [nonpub. opn.] (*Washington*).)

We granted defendant's request to incorporate the record of this prior appeal by reference here.

Defendant, acting in propria persona, petitioned the trial court for resentencing based on changes to the felony-murder rule under recently enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).  (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019.)  The trial court summarily denied his petition before appointing him counsel after finding, in pertinent part, that given the jury's true finding on the robbery-murder special circumstance under section 190.2, subdivision (a)(17), defendant was not entitled to relief.

On appeal, defendant originally argued that because his petition complied with the statutory requirements, he was entitled to appointment of counsel, briefing, and a hearing on the merits of his petition before the trial court's denial.  He further argued that even if the record of conviction could be properly considered in the trial court's prima facie determination, the jury's true finding on the robbery-murder special circumstance could not preclude his petition for relief because that finding predated the California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

In accordance with the Supreme Court's decision in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*) and the legislature's codification of that decision in Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) (Stats. 2021, ch. 551, §§ 1-2.), we issued an unpublished decision concluding the trial court erred in summarily denying defendant's petition without the benefit of the appointment of counsel and briefing.  However, we found any error was harmless under the circumstances of this case, and

2

accordingly, we affirmed the trial court's postjudgment order. (*People v. Washington* (Apr. 20, 2022; C092937 [unpub. opn.].)

Defendant appealed to the California Supreme Court, which directed this court to vacate its previous decision and reconsider the matter in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). Having done so, we agree with the parties that the trial court's postjudgment order must be reversed and the matter remanded for further proceedings consistent with this decision.

FACTS AND HISTORY OF THE PROCEEDINGS

A. The Underlying Robbery-Murder

We take the facts from the unpublished opinion we issued in 2013 affirming defendant's convictions in *Washington*:

"During the early morning hours of June 7, 2008, defendant and Abella were hanging out together at an apartment complex in Rancho Cordova where Abella's mother lived. At the time, defendant was dating Abella's sister, E.G, who was also present.

"At approximately 2:40 a.m., defendant and Abella walked to a nearby 7-Eleven store. The events that occurred thereafter were captured in large part on surveillance cameras mounted at the 7-Eleven and at an adjacent check-cashing store.

"At approximately 2:50 a.m., defendant and Abella left the 7-Eleven and approached 50-year-old William Deer, who was sitting on a curb outside the check-cashing store drinking coffee he had just purchased at the 7-Eleven. Deer was both mentally and physically handicapped due to a motorcycle accident more than 20 years earlier.

"Earlier that evening, Deer's mother had dropped him off at a bus stop in Sacramento so he could visit friends in Rancho Cordova. At the time, Deer wore a fanny pack around his waist in which he carried various personal items, including a cell phone charger, a toothbrush, cigarettes, and money. He also carried with him a cell phone.

3

Deer was wearing the fanny pack in the 7-Eleven approximately 30 minutes before he was approached by defendant and Abella.

"What transpired during the initial encounter with Deer is not altogether clear. However, what is clear is that, at some point, defendant and Abella beat, kicked and stomped on Deer and then ran from the scene.

"Approximately 30 minutes later, defendant returned to the area with E.G. By that time, defendant had changed his shirt. The two approached Deer, who was still lying where defendant and Abella had left him following the beating. E.G. could see that Deer was hurt but he was still alive. Defendant and E.G. departed.

"Seven minutes later, defendant and Abella returned to where they had left Deer. Less than a minute later, they again ran from the scene.

"Defendant and Abella returned a third time approximately 30 minutes later, this time with a BB gun. They shot Deer 19 times in the face and abdomen and then fled the scene.

"Police were eventually dispatched to the 7-Eleven and found Deer still alive. They did not find a fanny pack or cell phone in the area; nor did they find any identification for the victim. Deer was taken to the hospital, where he later died. The cause of death was determined to be multiple blunt force head injuries plus multiple BB pellet injuries.

"Five days later, defendant and Abella were arrested. They were charged with murder, robbery and torture and were tried separately. Defendant was ultimately convicted and sentenced as previously indicated." (*Washington, supra*, C065636.)

B. The Legislation

Senate Bill 1437, which became effective on January 1, 2019, was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the

4

underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The legislation accomplished this by amending sections 188 and 189 and adding section 1170.95 to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) We will refer to the section by its new numbering where possible.

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also added section 1172.6, which allows "those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief . . . ." (*People v. Gentile* (2020) 10 Cal.5th 830, 843.) Section 1172.6, subdivisions (b) and (c) create a two-step process for evaluating a petitioner's eligibility for relief. (*Lewis*, *supra*, 11 Cal.5th at pp. 960-962.) First, the trial court determines whether the petition is facially sufficient under section 1172.6, subdivision (b). (*Lewis*, at p. 960.) If the petition is facially sufficient, then, the trial court moves on to subdivision (c), appointing counsel (if requested) and following the briefing schedule set out in the

statute. (*Lewis*, at p. 966.) Following the completion of this briefing, the trial court then determines whether the petitioner has made a prima facie showing they are entitled to relief. (*Ibid.*)

As our Supreme Court explained, "[w]hile the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 117[2.6] relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra*, 11 Cal.5th at p. 971.)

As relevant here, Senate Bill 775 (2021-2022 Reg. Sess.), which took effect on January 1, 2022, amended section 1172.6 to codify the holdings of *Lewis* regarding petitioners' right to counsel and the standard for determining the existence of a prima facie case, as well as to clarify the burden of proof at the resentencing hearing as proof beyond a reasonable doubt and address what evidence may be presented at the resentencing hearing. (Cal. Const. art. IV, § 8; Stats. 2021, ch. 551, § 1.)

C. The section 1172.6 Proceedings

On September 20, 2020, defendant filed a petition in propria persona requesting resentencing under section 1172.6. Defendant did not use a form petition, instead averring in pertinent part and in paragraph form, that he had been charged and convicted of first degree murder under either felony murder or murder under the natural and probable consequences doctrine. However, because of changes brought about by Senate

6

Bill 1437 to sections 188 and 189, defendant could not now be convicted of first or second degree murder. Finally, defendant requested appointment of counsel.

On October 14, 2020, the trial court summarily denied defendant's petition in an ex parte written order. This order noted the court's review of defendant's file, that defendant's jury had been instructed with special circumstances as defined in CALCRIM No. 703 (the substance of which the court recounted), that the jury had determined this special circumstance to be true, and finally, that defendant had also committed robbery and torture and that the jury had found the personal use of a BB gun enhancement true. Accordingly, the court concluded, "It is abundantly clear that the defendant could still be prosecuted for murder under current murder theories including as the actual killer, direct aiding and abetting, or under current felony murder law." Therefore, the court denied relief. Defendant timely appealed.

## DISCUSSION

As noted, *supra*, our original unpublished decision in this matter found the trial court erred in summarily denying defendant's petition without the benefit of the appointment of counsel and briefing. However, we found any error was harmless in light of the jury's special circumstances finding under 190.2, subdivision (a)(17), which had predated the Supreme Court's decisions in *Banks, supra*, 61 Cal.4th 788 and *Clark, supra*, 63 Cal.4th 522. (*People v. Washington* (Apr. 20, 2022; C092937 [unpub. opn.].).)

Following the issuance of our opinion, the California Supreme Court decided *Strong*, which held that: "Findings issued by a jury before *Banks* and *Clark* do not preclude a defendant from making out a prima facie case for relief under Senate Bill 1437. This is true even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*." (*Strong, supra*, 13 Cal.5th at p. 710.) Accordingly, our conclusion that any trial court error was harmless in light of the jury's pre-*Banks* and

7

*Clark* finding cannot survive *Strong*.  We will therefore reverse the trial court's postjudgment order and remand for further proceedings consistent with this opinion.

## DISPOSITION

The trial court's postjudgment order is reversed, and the matter remanded for further proceedings consistent with this opinion.

<br>

_____
                                            HULL, J.


We concur:


_____
ROBIE, Acting P. J.


_____
KRAUSE, J.